## MAY v. MOSS.

### No. 14369.

United States Court of Appeals
Eighth Circuit.

Feb. 5, 1952.

Rehearing Denied March 1, 1952.

134

Harry E. Meek, Little Rock, Ark. (A. F. House, Little Rock, Ark., on the brief), for appellant.

D. D. Panich, Little Rock, Ark., for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge, delivered the opinion of the Court.

The question on this appeal is the jurisdiction of a United States District Court in an action by a trustee in bankruptcy to recover title and possession of lands conveyed by the bankrupts before the institution of the bankruptcy proceedings.

In his complaint the trustee, after stating that Leon S. Horne and Nell Horne, doing business as the Star City Lumber Company, were adjudged bankrupts on January 9, 1950, on an involuntary petition in bankruptcy filed on December 22, 1949, alleged:

That on October 14, 1948, the bankrupts by their warranty deed conveyed the lands in controversy to A. B. Banks & Company of Fordyce, Arkansas, and on the same date acquired from the grantee an option to repurchase the lands on or before the 13th day of June, 1949; that on the 9th day of June, 1949, the bankrupts assigned their rights under the repurchase agreement to H. J. Mosser, and that on the 13th day of June, 1949, A. B. Banks & Company by its special warranty deed conveyed the property in dispute to Mosser, the special warranty deed being duly placed of record on the 20th day of June, 1949; that the transfer by the bankrupts of their right under their option to repurchase from A. B. Banks & Company was without consideration, was made one year next preceding the filing of the petition in bankruptcy, and at a time when the bankrupts were insolvent and when the property remaining in their hands was an unreasonably small capital for the business in which the bankrupts were engaged or about to engage; that all of the property in controversy was located within the territorial limits of the District Court; that the transfer by the bankrupts of their right to repurchase from A. B. Banks & Company was made for the purpose of hindering and defrauding the creditors of said bankrupts contrary to the laws of Arkansas, § 62–1302, Ark.Stats.Ann., 1947; and that the action was brought under section 67 of the National Bankruptcy Act, 11 U.S.C.A. § 107, for the purpose of avoiding a fraudulent transfer and under section 70 of the Act, 11 U.S.C.A. § 110, for the purpose of avoiding a transfer declared by the provisions of said section to be void.

On information and belief the trustee alleged that the bankrupts were indebted to A. B. Banks & Company in the sum of approximately $66,000, and that said sum was paid by Mosser to A. B. Banks & Company in consideration for the purchase of the lands in controversy; that the lands were of a value in excess of $125,000; and that the bankrupts' right to repurchase from A. B. Banks & Company was the most valuable asset remaining to the bankrupt estate.

On the allegation that the transfer by the bankrupts of their right to repurchase from A. B. Banks & Company was void

under the laws of Arkansas and the National Bankruptcy Act, a decree was asked impressing the lands in the hands of Mosser with a trust for the benefit of the bankrupt estate.

Mosser answered the complaint denying its material allegations and asserting ownership of the property in controversy.

When the case came on for hearing on May 23, 1950, the appellant May appeared and orally moved the court for leave to intervene to assert his rights under an executory contract with Mosser for the purchase of the lands in suit on which he had paid $5,000 as earnest money. That contract dated February 7, 1950, obligated Mosser to deliver a merchantable title to the lands in controversy, allowed May sixty days from the date of the contract in which to examine the abstracts of title to the lands to be delivered by Mosser obligated Mosser to take the necessary steps to cure any defects in the title to the lands, and allowed him reasonable time in which to do the necessary curative work.

After an extended discussion between court and counsel an agreement was reached. May was allowed to prepare and file his petition for leave to intervene and his intervention which was granted. And by consent of all parties the court entered its decree vesting title to the lands in controversy in the trustee, subject to a first lien in favor of Mosser for his investment in the lands and subject to May's right to purchase the lands from the trustee in accordance with the terms of his executory contract of purchase from Mosser. May was ordered to furnish counsel for the trustee not later than May 29, 1950, all title requirements. The trustee was directed to comply with them forthwith, and May was granted a period of thirty days from the date of the order, May 23, 1950, to pay to the trustee $120,000 in cash, the balance due under his contract.

On June 22, 1950, the court granted to May an additional ten days time in which to comply with the terms of the court's order of May 23, 1950, upon May's offer to waive all remaining requirements as to title and to pay to the trustee the sum of $72.23, interest accruing on the debt to Mosser. On July 3, 1950, the court granted to May an additional extension of twenty days on May's agreement to increase the purchase price of the lands by $20,000 ($10,000 of which was paid by May in cash), to pay the balance due on the contract of purchase within six months, and to pay to the trustee the amount of Mosser's lien on or before the 23rd day of July, 1950. The order allowing this extension of time cancelled May's original contract for the purchase of the lands from Mosser, contained other provisions not necessary for present consideration, and directed the trustee and May to enter into a new contract for the sale of the lands to May embracing the provisions of the court's order. The new contract of sale was duly executed by May and the trustee. on the 3rd day of July, 1950.

On December 28, 1950, the court granted to May a further extension of four days in which to comply with the terms of the order of July 3, 1950. Within the time allowed him under the order last mentioned May paid into the registry of the court all sums required of him by the order of December 28, 1950, and on January 2, 1951, filed his petition for an order of the court directing the trustee to convey the lands in controversy to him.

On January 5, 1951, the trustee moved to vacate the order of the court of December 28, 1950, on the alleged ground that at the time the additional four days extension of time was granted to May in the order he was in default on his obligations under previous orders and under his contract with the trustee of July 3, 1950, and that the trustee had been offered $190,000 by a third party, not identified, for the lands in litigation.

On the 7th day of March, 1951, on the motion just stated or on its own motion (the record does not show), the court entered the decree from which May has appealed.

This decree vacated that part of the original consent decree of May 23, 1950, subjecting the lands in controversy to the rights of May under his contract of purchase from Mosser and vested title to the

lands in the trustee subject only to the lien in favor of Mosser; vacated the order allowing May to intervene and dismissed his intervention; vacated the various orders of the court of June 22, 1950, July 3, 1950, and December 28, 1950, granting May extensions of time in which to comply with his contract of purchase; and dismissed the petition filed by May on January 2, 1951, praying for an order directing the trustee to convey the lands in controversy to May. The ground assigned for the court's action in each instance was that it was without jurisdiction to make any of the orders except that part of the consent order which vested title in the trustee subject to Mosser's lien.

In its memorandum opinion the court said that the question before it was whether it had jurisdiction to order the trustee to perform Mosser's contract to sell the lands to appellant May. It concluded that the order was not within its jurisdiction, saying: "These lands having passed into the custody of the bankruptcy court upon the filing of the petition, subject only to the first lien of Mosser, that custody was exclusive. The present action being a plenary action in equity to reduce these assets to the actual possession of the Trustee in Bankruptcy, this court was without jurisdiction to direct the Trustee 'to perform as Vendor in the place and stead of H. J. Mosser and Suzanne M. Mosser,' in accordance with the contract of February 7, 1950. The court of bankruptcy has not and cannot surrender its exclusive jurisdiction, nor can it be deprived of that jurisdiction by consent of parties, or the consent of parties to any orders or proceedings had since the filing of the petition. The jurisdiction of the court of bankruptcy having once attached cannot be defeated by any proceeding in any other court."

The error in this statement of the law of the case is the assumption on the part of the court that the lands in controversy came into the custody of the bankruptcy court upon the filing of the petition in bankruptcy, while admitting that neither the trustee nor the bankrupts were in possession at the time of the filing of the petition. The action stated in the complaint is a plenary action between the trustee and adverse claimants. When the action was brought the lands in controversy were in the possession of Mosser, an adverse claimant, and had been in his possession and that of his immediate grantor for more than one year preceding the filing of the bankruptcy petition. Duda v. Sterling Mfg. Co., 8 Cir., 178 F.2d 428, 433, 14 A.L.R.2d 899. Jurisdiction of this action is expressly conferred on the District Court by section 23 of the Bankruptcy Act as follows:

"Sec. 23. Jurisdiction of United States and State Courts.—a. The United States district courts shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings under this Act, between receivers and trustees as such and adverse claimants, concerning the property acquired or claimed by the receivers or trustees, in the same manner and to the same extent as though such proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants.

"b. Suits by the receiver and the trustee shall be brought or prosecuted only in the courts where the bankrupt might have brought or prosecuted them if proceedings under this Act had not been instituted, unless by consent of the defendant, except as provided in sections 60, 67, and 70 of this Act." 11 U.S.C.A. § 46.

In Schumacher v. Beeler, 293 U.S. 367, 55 S.Ct. 239, 79 L.Ed. 433, the Supreme Court interpreted section 23, sub. b as a grant of jurisdiction to the district courts in suits brought by trustees in bankruptcy against adverse claimants provided the defendant consents to be sued in the court, although the suits were such that the bankrupt could not have brought them in that court if the bankruptcy proceedings had not been instituted, and also as a grant of jurisdiction to the district courts of suits for the recovery of property under sections 60, 67, and 70 of the Bankruptcy Act, 11 U.S.C.A. §§ 96, 107, 110, without the consent of the defendant. See also Williams v. Austrian, 331 U.S. 642, 646, 67 S.Ct. 1443, 91 L.Ed. 1718; Lowenstein v. Reikes, 2 Cir., 54 F.2d 481, 483; United States Fidelity & Guar-

anty Co. v. Sweeney, 8 Cir., 80 F.2d 235, 240; Green v. Gage, 5 Cir., 186 F.2d 984, 985.

■ If the complaint sufficiently stated an action for the recovery of property fraudulently transferred within the meaning of section 67 of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. d(2), or section 70 of the Act, 11 U.S.C.A. § 110, sub. e, the District Court had jurisdiction regardless of the amount in controversy or the consent of the defendants and irrespective of whether there was diversity of citizenship and other grounds of Federal jurisdiction. If, on the other hand, the action is one by the trustee to recover property in the hands of adverse claimants and not an action under either section 67 or 70 of the Bankruptcy Act, it was within the jurisdiction of the District Court with the consent of the defendants and without regard to the amount involved or the citizenship of the bankrupts and defendants. Since in this case Mosser answered on the merits and May invoked the jurisdiction of the District Court, the requisite consent of the defendants is apparent.

In actions under sections 67, sub. d(2) and 70, sub. e of the Bankruptcy Act, where plenary suits are necessary, jurisdiction is conferred upon any State court which would have had jurisdiction had bankruptcy not intervened and upon "any court of bankruptcy". 11 U.S.C.A. §§ 107, sub. e and 110, sub. e(3). There is no conflict between these sections and section 23. Schumacher v. Beeler, supra, 293 U.S. at page 376, 55 S.Ct. 230. By section 1, sub. 10 of the Bankruptcy Act "courts of bankruptcy" include district courts. MacDonald v. Plymouth Trust Company, 286 U.S. 263, 266, 52 S.Ct. 505, 76 L.Ed. 1093. If the complaint in this action stated an action under either section 67 or 70 of the Bank-

ruptcy Act the District Court is to be regarded as a "court of bankruptcy". Lowenstein v. Reikes, supra, 54 F.2d at page 483.

■ Having jurisdiction of the action the court had power to enter the consent decree of May 23, 1950, vesting title to the lands in controversy in the trustee subject to a lien in favor of Mosser and to Mosser's obligation to convey the property to May. The intervention of May and the various orders of the court extending May's time to complete the purchase from the trustee were within the court's discretion. The consent decree of May 23, 1950, until reversed or vacated in the manner provided by law is conclusive upon the parties.

■ A consent judgment has the same force and effect as any other judgment until set aside in the manner provided by law. Woods Bros. Const. Co. v. Yankton County, S. D., 8 Cir., 54 F.2d 304, 308, 81 A.L.R. 300. Except as provided by law it can not be modified in any essential part without the consent of the parties. City of Des Moines v. Des Moines Water Co., D.C.S.D.Iowa, 218 F. 939, 943.

There is no suggestion here that the consent judgment is subject to vacation or modification for any of the grounds for such action set out in Rule 60(b) of the Rules of Civil Procedure, 28 U.S.C.A., except that the judgment was void for want of jurisdiction.

Other grounds assigned by the trustee for the affirmance of the judgment appealed from have been examined but require no comment.

The judgment appealed from is reversed and the case is remanded to the District Court for further proceedings in accordance with this opinion.